UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

July 26, 2022

LETTER TO ALL COUNSEL OF RECORD

Re: *Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.*
Civil No. 21-0626-BAH

Dear Counsel:

On March 12, 2021, Karen O., on behalf of her deceased son, Justin O., ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA" or "Defendant" or "Commissioner") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1, *as amended by* ECF 2. I have considered the record in this case, ECF 16, Plaintiff's motion to remand the case back to the SSA with supporting memorandum of law, ECF 21, Defendant's motion for summary judgment, ECF 22, and Plaintiff's reply, ECF 23. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Plaintiff's motion to remand, DENY the SSA's motion for summary judgment, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

On June 8, 2016,[1] Plaintiff filed a Title II application for a Period of Disability and Disability Insurance Benefits ("DIB"), Tr. 214–17, and a Title XVI application for Supplemental Security Income ("SSI"), Tr. 228–37. Plaintiff's amended alleged onset date is June 1, 2016.[2] 275, 295, 311. Plaintiff's claims were denied initially and on reconsideration. Tr. 135–38, 139–42, 144–47, 148–50. On September 16, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 45–68. On September 24, 2019, eight days after the hearing, Plaintiff died by suicide.

---

[1] The ALJ's decision incorrectly states that Plaintiff protectively filed a Title II application on February 17, 2017. *See* Tr. 28.

[2] Plaintiff's applications listed May 10, 2016, as the disability onset date. Tr. 214, 230. The record indicates that Plaintiff contacted the SSA to modify the alleged onset date to June 1, 2016, which the SSA reported on April 13, 2017. Tr. 275. The SSA reported June 1, 2016, as the onset date on two subsequent reports. Tr. 295, 311. At the hearing before the ALJ on September 16, 2019, Plaintiff's counsel confirmed June 1, 2016, as the alleged disability onset date, and June 30, 2016, as the date of last insured. Tr. 49–50, 52.

*Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.*
Civil No. 21-0626-BAH
July 26, 2022
Page 2

*See* Pl.'s Death Certificate, ECF 21-1 (stating that Plaintiff's immediate cause of death was due to "mixed drug (fentanyl, buprenorphine, and carisoprodol) intoxication; despropionyl; mitragynine, and cocaine use").

On October 17, 2019, the ALJ issued a decision, determining that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 28–38. Plaintiff's mother filed a request to be designated as a substitute party on his behalf. *See* Tr. 69 ("Notice Regarding Substitution of Party Upon Death of Claimant"). On November 18, 2019, Plaintiff requested review by the Appeals Council of the ALJ decision. Tr. 210–13.

On July 9, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 13–18. Therefore, the ALJ's October 17, 2019, decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process used to evaluate a claimant's disability determination. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)) (citation omitted).

Here, at step one, the ALJ determined that Plaintiff "me[t] the insured status requirements of the Social Security Act through March 31, 2018."[3] Tr. 30. Then, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since June 1, 2016, the alleged onset date." Tr. 30. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "depression, attention deficit hyperactivity disorder (ADHD), and borderline personality disorder." Tr. 30. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "cocaine dependence with intoxication, alcohol abuse with intoxication, and opioid dependence with withdrawal." Tr. 31 (citing Tr. 906). At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1." Tr. 31. Despite these impairments, the ALJ determined that Plaintiff retained the residual

---

[3] The ALJ noted that as part of the DIB determination, "[Plaintiff's] earnings record shows that [Plaintiff] has acquired sufficient quarters of coverage to remain insured through March 31, 2018," per the requirements of "sections 216(i) and 223 of the Social Security Act[.]" Tr. 28.

*Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.*
Civil No. 21-0626-BAH
July 26, 2022
Page 3

functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant will be off task five percent of the time; can perform simple and routine tasks; can understand and carryout simple one or two step instructions; and can have occasional interaction with coworkers, the public, and supervisors.

Tr. 32. The ALJ determined that Plaintiff had no past relevant work but could perform other jobs that existed in significant numbers in the national economy, such as "marker" (DOT[4] 209.587-034); "stuffer" (DOT 520.685-210); and "addresser" (DOT 209.587-101). Tr. 36–37. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 37.

### III.   THE APPEALS COUNCIL DENIAL

"If 'dissatisfied' with an ALJ decision as to entitlement to disability benefits, a claimant 'may request' that the Appeals Council review 'that action.'" *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (quoting 20 C.F.R. § 404.967). "When a claimant requests review of an ALJ decision, the Appeals Council 'may deny *or* dismiss the request for review, *or* it may grant the request and either issue a decision or remand the case to [the ALJ].'" *Id.* (emphases in original).

On November 18, 2019, the SSA acknowledged receipt of Plaintiff's request for the Appeals Council review of the ALJ's decision. Tr. 210–13. In his request, Plaintiff stated five reasons that Plaintiff alleged that the ALJ's decision was flawed. *See* Tr. 212. In its "Notice of Appeals Council Action," dated July 9, 2020, the Appeals Council informed Plaintiff that after considering Plaintiff's reasons for disagreeing with the ALJ's decision, it did not find a basis for changing the ALJ's decision. Tr. 13. The Appeals Council limited the scope of its denial of review, stating that "[t]his letter is only about your claim for a period of disability, disability insurance benefits. We will send you a separate letter about your claim for supplemental security income."[5] Tr. 13. The attached order of the Appeals Council simply acknowledged receipt of "additional evidence which it is making part of the record," referring to the admission of Plaintiff's counsel's request for review of the ALJ's decision, Tr. 210–13, which is also marked as Exhibit 18B in the record. Tr. 17. The Appeals Council concluded that the ALJ's decision is the final

---

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

[5] The Court was unable to find any such letter in the record.

*Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.*
Civil No. 21-0626-BAH
July 26, 2022
Page 4

decision of the Commissioner in Plaintiff's case. Tr. 13.

## IV. ANALYSIS

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### A. SSI CLAIM

As an initial matter, the status of Plaintiff's SSI claim is unclear. As noted above, the Appeals Council narrowed its denial of Plaintiff's request for review to Plaintiff's DIB claim. *See* Tr. 13, 17. Since the Court was unable to find the Appeals Council's "separate letter about [Plaintiff's] claim for [SSI]," Tr. 13, in the record, ECF 16, and neither party addressed the issue in their respective briefs, ECFs 21, 22, 23, it remains unclear as to whether the ALJ's decision is the final, reviewable decision as to *both* Plaintiff's DIB *and* SSI claims, or solely Plaintiff's DIB claim. If the latter view is correct, review of Plaintiff's SSI claim would be out of this Court's reach, as judicial review in this context is restricted to final decisions of the SSA. *See, e.g.*, *Quattlebaum v. Saul*, Case No. DLB-19-3258, 2021 WL 1225542, at *3 (D. Md. Mar. 31, 2021) (discussing the scope of judicial review in the context of the Supreme Court's interpretation of the 42 U.S.C. § 405(g)'s finality requirement in *Smith v. Berryhill*, 139 S. Ct. 1765, 1779 (2019), and confining the Court's review to questions that the ALJ or the Appeals Council already had the chance to address). Accordingly, the Court makes no determination as to Plaintiff's SSI claim.[6]

---

[6] The Court recognizes that because Plaintiff was twenty-five years old at the time of his tragic death, his mother may not have standing to bring a challenge to the denial of SSI benefits. *See, e.g.*, *Field v. Commissioner of the Social Security Administration*, Case No. 6:18-cv-119-Orl-37KRS, 2018 WL 7568927, at *3 (M.D. Fla. Dec. 10, 2018) (dismissing SSI claim because the plaintiff's mother lacked the requisite standing pursuant to 20 C.F.R. § 416.542(b)(1)–(4) due to claimant's age at death); *Gregorka v. Commissioner of the Social Security Administration*, No. 6:13-CV-1408 (GTS/TWD), 2015 WL 3915959, at *5 (N.D.N.Y. June 25, 2015) (affirming Commissioner's finding that plaintiffs were not entitled to recover SSI benefits because the deceased claimant was "fifty-seven years old when he applied for SSI," so they were not "the surviving parents of a disabled child pursuant to agency regulations."). This issue, however, is not before the Court and will not be addressed.

*Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.*
Civil No. 21-0626-BAH
July 26, 2022
Page 5

Remand as to Plaintiff's SSI claim is therefore only appropriate to permit the Commissioner to clarify the justiciability of Plaintiff's SSI claim.

### B.  DIB CLAIM

The Court next considers Plaintiff's DIB claim.  Plaintiff raises two main arguments on appeal in the context of Plaintiff's DIB claim: 1) that the ALJ erred in determining Plaintiff's RFC; and 2) that the ALJ failed to resolve the apparent conflict between the vocational expert's ("VE's") testimony and the information contained in the DOT.  Pl.'s Br. 3–24, ECF 21.  Plaintiff relies on *Dowling v. Commissioner of Social Security Administration*, 986 F.3d 377, 387 (4th Cir. 2021) for the proposition that the ALJ erred in applying the wrong legal standards.  Defendant counters that the ALJ's decision was reached under the appropriate legal standards and is supported by substantial evidence.  Def.'s Br. 5–15, ECF 22.

In considering Plaintiff's first argument, the Court is guided by the Fourth Circuit's reservoir of case law addressing how an ALJ ought to determine a claimant's RFC.  *See, e.g.*, *Dowling*, 986 F.3d at 387–88; *Thomas v. Berryhill*, 916 F.3d 307, 310–12 (4th Cir. 2019), *as amended* (Feb. 22, 2019); *Lewis v. Berryhill*, 858 F.3d 858, 861–62 (4th Cir. 2017); *Patterson v. Comm'r, Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179–80 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).  This Court summarized that, "[i]n determining RFC, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds." *Crystal Louise H. v. Comm'r, Soc. Sec. Admin.*, Civil Action No. ADC-18-3922, 2019 WL 5309997, at *7 (D. Md. Oct. 21, 2019) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)); *see also Monroe*, 826 F.3d at 187 (citing *Mascio*, 780 F.3d at 636) ("Under [SSR 96-8p], the 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations.").

In *Dowling*, the Fourth Circuit specifically found that an ALJ's reliance on an incorrect regulatory framework led to a flawed RFC determination, which weighed heavily in favor of remand.  *Dowling*, 986 F.3d at 387.  The ALJ in that case failed to cite to two essential regulatory frameworks in assessing the appellant's RFC: 20 C.F.R. § 416.945 and SSR 96-8p.  *Id.*  The ALJ also "did not indicate that his RFC assessment was rooted in a function-by-function analysis of how Appellant's impairments impacted her ability to work."  *Id.*  The court highlighted that "an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same."  *Id.*

In addition to correctly contending that such an omission by the ALJ runs afoul of the Fourth Circuit's holding in *Dowling*, Plaintiff cites to another district court case in this Circuit where the court found such an error reversible.  In *Beverly C. v. Kijakazi*, the court recognized that, "[t]he ALJ's only reference to 20 C.F.R. § 404.1545 and SSR 96-8p appears in the boilerplate explanation of the disability evaluation process that precedes his findings of fact and conclusions of law." C/A No. 1:20-cv-4490-JMC-SVH, 2021 WL 6494740, at *24 (D.S.C. Aug. 31, 2021), *report and recommendation adopted*, No. 1:20-CV-04490-JMC, 2021 WL 5711286 (D.S.C. Dec.

Case 1:21-cv-00626-BAH   Document 24   Filed 07/26/22   Page 6 of 9

*Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.*
Civil No. 21-0626-BAH
July 26, 2022
Page 6

2, 2021). The court further states, "[t]he ALJ considered Plaintiff's allegations generally, but not specifically, and cited some evidence to suggest they were inconsistent with the other evidence of record. He did not adequately explain how the evidence supported the RFC he assessed[]," concluding that "substantial evidence does not support the ALJ's RFC assessment." *Id.* at *24–25.

Plaintiff asserts that, "nowhere in her decision did the ALJ reference 20 C.F.R. § 416.945 or SSR 96-8p or address their requirements." Pl.'s Br. 5, ECF 21. Although Defendant accurately points out that this overbroad assertion is not entirely accurate, Def.'s Br. 5, ECF 22-1, Plaintiff subsequently clarified, "[c]ritically, nowhere in the ALJ's decision under the **Findings of Fact and Conclusions of Law**, did the ALJ ever refer to, or cite to, the required regulatory framework under 20 C.F.R. § 416.945 or SSR 96-8p or address their requirements." Pl.'s Reply 12, ECF 23 (emphasis in original). Plaintiff is correct. The ALJ failed to meaningfully address the regulatory requirements of 20 C.F.R. §§ 404.1545, 416.945, and SSR 96-8p most notably in step two, step three, and the RFC assessment. Tr. 30–36.

At step two, the ALJ assured that all of Plaintiff's "nonsevere impairments were considered in the evaluation of [Plaintiff's] residual functional capacity." Tr. 31. Notably absent from the ALJ's step two analysis is consideration of Plaintiff's generalized anxiety disorder diagnosis, which remained a consistent diagnosis throughout Plaintiff's medical records. In fact, the single progress note to which the ALJ cites in defense of categorizing Plaintiff's anxiety as non-severe ("[t]here are no signs of anxiety apparent," Tr. 916) lists "[g]eneralized anxiety disorder" as an active diagnosis at the conclusion of the note. *See* Tr. 916.

Then, in analyzing the four broad areas of functioning as part of the "paragraph B" criteria[7] at step three, the ALJ determined that Plaintiff had the following limitations: a mild limitation in "understanding, remembering or applying information;" a moderate limitation in "interacting with others;" a moderate limitation in "concentrating, persisting or maintaining pace;" and a mild limitation in "adapting or managing oneself." Tr. 31–32. Although the ALJ did not explicitly state that Listing 12.04 requires additional analysis of "paragraph C" criteria, the ALJ inexplicably determined that "the evidence fails to establish the presence" of such criteria because "[t]he medical evidence of record supports a finding that the claimant can make more than marginal

---

[7] "Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. . . . The functional area of concentration, persistence, or pace 'refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate.'" *Geneva W. v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-18-1812, 2019 WL 3254533, at *2 (D. Md. Jul. 19, 2019) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), (E)(3) (2017)). "The SSA . . . rate[s] a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment 'interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Id.* (citing 20 C.F.R. §§ 416.920a(b), (c)(2) (2017)). "The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme." *Id.* § 416.920a(c)(4).

*Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.*
Civil No. 21-0626-BAH
July 26, 2022
Page 7

adjustment." Tr. 32. The ALJ did not provide a single example from the record to support this finding.

Perhaps the ALJ thought that the final paragraph of the step three analysis would suffice for the overall lack of support in this portion of their decision. The ALJ states, "The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." Tr. 32. Unfortunately, the ensuing RFC analysis lacks a "more detailed assessment."

Rather, in the RFC analysis, the ALJ stated, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 33. The ALJ proceeds to cite salient observations from Plaintiff's testimony and evidence from the record of Plaintiff's long history of mental anguish. Tr. 33–35. For example, the ALJ recognized that that Plaintiff's discharge notes from a February 2016 suicide attempt state that Plaintiff "has a history of polysubstance abuse and multiple suicide attempts." Tr. 33 (citing emergency department and inpatient hospital records from George Washington University Hospital, Tr. 608–686).

The ALJ acknowledged that in January of 2018, "Dr. Nduaguba-Ezumba opined that the claimant has the ability to understand and carryout a task; that certain environmental factors may have the potential to cause anxiousness; and may have difficulty with regard to functioning due to mental condition and this problem would be exacerbated in a work setting." Tr. 34. However, the ALJ decided to "give[] the statement that the claimant has the ability to understand and carryout a task, with some factors causing anxiety, great weight, and the rest of the opinion little weight." Tr. 34. "This opinion is based on personal examination of the claimant. The first part of the opinion is provided in function-by function terms, but the second half is not. The former part of the opinion is consistent with the claimant's ability to perform multiple jobs, but with difficulty relating to others." Tr. 34. The ALJ noted that Plaintiff "did present with symptoms of anxiety in April 2019 (18F/23–25)" but that "[b]y April 25, 2019, [Plaintiff's] behavior was stable and uneventful." Tr. 35. The ALJ summarized the most recent medical evidence in the record as follows:

> Medical evidence of record from September 2019 indicates that the claimant's behavior was stable and uneventful, and his medication compliance was good (19F/1-3). The claimant was in jail for three months. The claimant reported difficulties with his family members. The claimant started a gratitude journal while incarcerated. The claimant reported that he was sober. The claimant's mood was euthymic with no signs of depression or manic process. The claimant presented as relaxed, attentive, communicative, and well-groomed and dressed. The claimant's speech was normal in rate, volume, articulation, and language skills. The claimant exhibited no signs of anxiety.

Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.
Civil No. 21-0626-BAH
July 26, 2022
Page 8

Tr. 35. Without explaining how he resolved the plethora of conflicting evidence in the record or how the RFC accounts for relevant work-related functions,[8] the ALJ concluded that Plaintiff's RFC "is supported by the medical evidence of record and opinion evidence as discussed above." Tr. 36. The ALJ explained that he "include[d] off task limitations because the claimant may need breaks if he needs to regroup his emotions if finding himself off task and/or because of the claimant's insomnia" and that "[t]he medical evidence of record indicates that the claimant can watch a show and play video games, which indicates an ability to stay on task." Tr. 36. The ALJ concluded that, "[m]edical evidence of record consistently indicates that the claimant has benign and mostly normal mental examinations when compliant with medications. The claimant is also consistently and able to find and keep a job when compliant with medications." Tr. 36.

Courts have illustrated the unique difficulty that cases involving mental illness, such as the case before this Court, present. "Mental health cases are different than physical ailments. There are no MRIs, x-rays, or EKGs to paint a picture of the mentally impaired claimant's condition. Mental health professionals can only learn about their patients by observation and dialog." *Nimmerrichter v. Colvin*, 4 F.Supp.3d 958, 973 (7th Cir. 2013); *see also Davis v. Berryhill*, Civil Action No.: 1:16-CV-61, 2017 WL 5129933, at *24 (N.D.W.V. Aug. 8, 2017) ("Relevant here, the ALJ frequently cites fair insight, good eye contact, linear thought process, and proper orientation as evidence that the mental status examinations were 'normal.' Absent is any explanation as to *how* those particular findings constitute an essentially or otherwise 'normal' mental status examination that is inconsistent with the medical opinions and [the plaintiff's] subjective complaints.") (emphasis in original).

In *Nimmerrichter*, the court took issue with a treating physician's records, which claimed that after each of the plaintiff's suicide attempt, the plaintiff "bounced back very nicely." *Id.* at 968. The court responded that the plaintiff "didn't 'bounce back nicely' after each suicide attempt, contrary to the medical expert's testimony." *Id.* at 969. In finding that the ALJ erred in considering all of the evidence of record and failing to resolve conflicting evidence, the court determined that "precedent would still have precluded him from determining that a few good treatment notes trumped pages of pessimistic treatment notes and genuine suicide attempts." *Id.* at 973 (citing *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("As we have explained before, a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single

---

[8] *See, e.g.*, *Thomas*, 916 F.3d at 311 (citing *Monroe*, 826 F.3d at 188; SSR 96-8p at *7; *Woods*, 888 F.3d at 694) ("The ALJ must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.' In doing so, the ALJ must provide 'a narrative discussion describing how the evidence supports each conclusion . . . .' (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC. Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.").

Case 1:21-cv-00626-BAH   Document 24   Filed 07/26/22   Page 9 of 9

*Karen O. o/b/o Justin O. v. Kilolo Kijakazi, Acting Comm'r, Soc. Sec. Admin.*
Civil No. 21-0626-BAH
July 26, 2022
Page 9

moment says little about her overall condition.")).

Similar to *Dowling* and its progeny, the ALJ in this case committed reversible error in failing to treat the RFC assessment as "a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." *Dowling*, 986 F.3d at 387. Accordingly, the ALJ did not apply the correct legal standard in the RFC assessment and the resulting RFC is not supported by substantial evidence, warranting remand. In so holding, and my discussion of the record notwithstanding, I express no opinion as to whether the ALJ's ultimate determination that Plaintiff was not entitled to benefits was correct.

Because the case is being remanded on other grounds, I need not address Plaintiff's arguments regarding the ALJ's failure to resolve the apparent conflict between the VE's testimony and the information contained in the DOT. On remand, the ALJ can, and should, consider these arguments and make any required adjustments to the opinion.

## V.   CONCLUSION

For the reasons set forth herein, Plaintiff's motion for remand, ECF 21, is GRANTED and Defendant's motion for summary judgment, ECF 22, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge